IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-00026-BO

JAMES WILLIAM THOMPSON,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

**ORDER**

This matter is before the Court on the parties' cross-motions for judgment on the pleadings [D.E. 27, 31]. For the reasons detailed below, defendant's motion is GRANTED and plaintiff's motion is DENIED. The decision of the Commissioner is AFFIRMED.

## **BACKGROUND**

Plaintiff filed application for disability insurance benefits and supplemental security income on July 28, 2008, alleging a disability beginning on January 7, 2007. The claim was denied initially and upon reconsideration. Following a hearing and an unfavorable decision by an Administrative Law Judge ("ALJ"), the Appeals Council remanded the matter for further consideration. Plaintiff appeared before the ALJ for a subsequent hearing, via video-conference, on September 27, 2013. In a decision dated October 21, 2013, the ALJ found that plaintiff was not disabled. Tr. 17–49. The Appeals Council denied plaintiff's request for review on December 8, 2014, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 1–4. Plaintiff commenced this action and filed a complaint pursuant to 42 U.S.C. 405(g) on February 12, 2015. [D.E. 5].

## MEDICAL HISTORY

Plaintiff was born in 1975 and has a work history as a cook and a sanitation worker. Plaintiff sustained significant injuries in a work-related accident when, in 2003, he was pinned between a sanitation truck and a car. He suffered fractures to his ankle, spine, rib, right arm as well as multiple leg fractures. Plaintiff had several surgeries followed by physical and occupational therapy. In 2004, plaintiff entered rehab for alcohol and drug abuse.

In January 2005, treating orthopedist Dr. Douglas Messina prescribed a knee brace for plaintiff and recommended he continue strength training. Plaintiff reported pain in his back, knee, and elbow to his primary care physician, Dr. Essam Eskander, in January 2007. Imaging studies revealed postoperative degenerative changes in the right knee and right elbow as well as minimal narrowing in the lumbar spine. Plaintiff had another surgery in 2007 to remove hardware from his knee. In December 2009, plaintiff saw Dr. Messina for persistent back, pelvis, right knee, and right elbow pain. Plaintiff also sought treatment in the Emergency Room in August 2010 for right knee pain after slipping, and again in June 2011 for back pain after attempting to remove a lawnmower from a stump.

Plaintiff returned to Dr. Messina in March 2012 complaining of knee and ankle pain. Dr. Messina observed a small, draining wound on the knee and noted that a bone scan indicated possible osteomyelitis. Dr. Messina performed surgery in June 2012 to remove a rod from plaintiff's right tibia. A postoperative staph infection was treated intravenously with antibiotics through a PICC line. At a follow-up appointment later that month, Dr. Messina noted slight antalgic gait and minimal swelling.

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first

four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

After finding that the plaintiff had not engaged in any substantial gainful activity since his alleged onset date at step one, the ALJ determined that plaintiff's status post motor vehicle accident with multiple fractures and borderline intellectual functioning were severe impairments at step two. Tr. at 20. The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or equaled a listing at step three. *Id.* at 21. The ALJ determined that the plaintiff had an RFC to perform a reduced range of sedentary work as follows: he can lift or carry up to 10 pounds occasionally and lesser amounts frequently; he can sit for six hours in an eight hour workday and walk occasionally but requires the option to sit/stand at will; he can never climb, crawl, or balance; he is restricted from exposure to industrial hazards; he can finger and handle no more than frequently with his dominant arm and hand; and he is limited to simple, routine, repetitive tasks. *Id.* at 25. At step four, the ALJ found that plaintiff was unable to perform his past relevant work as a cook or a sanitation worker. *Id.* at 47. At step five, the ALJ found that, considering his age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that he was capable of performing, including machine tender, surveillance system monitor, and order clerk. *Id.* at 49. Thus, the ALJ found that plaintiff was not disabled as of the date of his decision. *Id.*

Here, plaintiff argues that the ALJ erred in his credibility determination, and specifically challenges the evaluation of his pain symptoms. He further contends that the ALJ failed to properly evaluate Dr. Messina's opinions and plaintiff's use of a cane. The Commissioner asserts that the ALJ properly considered all the evidence and that substantial evidence supports his decision.

When analyzing a claimant's credibility, an ALJ must consider the objective medical signs, diagnoses and prognoses given by medical providers, how well their testimony lines up with their statements in the record, and the strength of the work history prior to alleging disability. *See* SSR 96–7p. If a plaintiff meets his threshold obligation of providing objective medical evidence of a condition reasonably likely to cause the claimed pain, he is entitled to "rely exclusively on subjective evidence" to demonstrate that her pain is "so continuous and/or so severe that it prevents [her] from working a full eight hour day." *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006).

With respect to plaintiff's allegations of pain and his credibility, the ALJ found that he had medically determinable impairments that could reasonably be expected to cause the symptoms he alleged. His 2003 accident, where he was pinned between a sanitation truck and a car, caused several fractures in his leg, torso, chest, and arm, for which he underwent several surgeries. However, the ALJ found that plaintiff's allegations as to the severity and limiting effects of those symptoms were not entirely credible. In making his credibility finding, the ALJ relied on the longitudinal medical record, plaintiff's subjective complaints of pain, the results of objective testing, and plaintiff's reported activities of daily living. The ALJ then explained his reasoning in great detail with citations to the record.

The ALJ noted that the treatment records from the primary care physician, Dr. Eskander, failed to demonstrate that plaintiff made regular complaints of pain and, when pain was reported, it was treated conservatively with medication. Tr. at 807–21. Objective testing in January 2007 also showed minimal findings. The right elbow and right knee showed degenerative changes with no acute processes, the right shoulder was normal, and the lumbar spine showed

5

spondylosis at L1-2 with no acute process. *Id.* at 814–17. The ALJ also noted that plaintiff had few, if any, visits to Dr. Eskander after July 2007. *Id.* at 27.

Dr. Messina's treatment records also fail to support the the degree of limitation alleged by plaintiff. In September 2007, Dr. Messina performed surgery to remove hardware from plaintiff's knee. Post-operatively, Dr. Messina noted full extension and flexion of the knee, and recommended that plaintiff increase activity and suggested vocational rehabilitation. *Id.* at 945–46. After a two year lapse, plaintiff returned to Dr. Messina in December 2009 complaining of pain in his back, knee, pelvis, and elbow. Flexion and extension were rated as ranging from good to full, and Dr. Messina recommended symptomatic treatment of pain. *Id.* at 1223. Plaintiff returned to Dr. Messina in March 2012 again reporting pain in his knee and ankle. *Id.* at 1329–30. Dr. Messina noted a small, draining wound on the knee, possibly osteomyelitis. *Id.* He performed surgery on June 1, 2012, to remove a rod in plaintiff's right tibia and perform debridement. *Id.* at 1331. Plaintiff also received intravenous antibiotics as he had developed a staph infection.[1] A follow-up appointment two weeks later noted slight antalgic gait and some mild swelling. *Id.* at 1326. The record fails to indicate that plaintiff sought any further treatment from Dr. Messina.

This evidence undermines plaintiff's allegations that he suffered from severe pain. The medical evidence above indicates infrequent complaints of pain and irregular medical treatment, with treatment gaps, one of which lasted over two years, for pain he alleges to be constant and debilitating. The ALJ also noted that he had conviction for breaking and entering; that although he claimed he could not afford medication, he had received a worker's compensation settlement for $200,000.00 and he continued to purchase cigarettes; and that he had tested positive for drug

---

[1] Although plaintiff alleged that he had a staph infection for several years, beginning in 2008, the ALJ noted that the record failed to support this allegation. Tr. at 28.

6

use. *Id.* at 33. Plaintiff offers no support for his assertions that these are improper considerations when evaluating credibility. *See, e.g., Hooker v. Astrue*, No. 5:11-CV-243, 2012 WL 7805502 (E.D.N.C. June 28, 2012) (upholding ALJ's credibility analysis which relied, in part, on claimant's purchasing of cigarettes and alcohol in finding claimant less than fully credible); *Kearney v. Chater*, No. 5:95-cv-902, 1997 WL 33709884, at *4 (E.D.N.C. June 16, 1997) (noting the lack of authority for the proposition that finder of fact is prohibited from considering a prior criminal record of a witness in assessing his credibility).

The ALJ also remarked that plaintiff's reported activities of daily living belied his testimony regarding his limitations. Plaintiff testified that he could stand only for an hour before he would need to sit down, that he could only lift 10 pounds with his right hand and only 20 pounds with his left hand, an that he had difficulty being around others. However, the evidence reflects that plaintiff is able to perform household chores, including cooking, cleaning, washing dishes, doing laundry, mowing the lawn, walking dogs, and fixing things around the house. He also stated he rides his bike, socializes with family and friends, attends church, and goes fishing. Additionally, plaintiff reported to a consultative examiner that he could walk one and one-half miles.

Plaintiff's contention that the ALJ misstated or exaggerated the evidence is incorrect. The ALJ's decision to find plaintiff's subjective allegations of pain and limitations only partially credible is supported by substantial evidence, and the Court finds no basis upon which to disturb the ALJ's credibility finding here. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("ALJ's observations concerning [credibility] are to be given great weight."); *see also Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for

7

that of the ALJ). Because plaintiff has shown only disagreement, not error, in the consideration of the medical evidence, he has failed to establish that remand is warranted.

Plaintiff also contends that the ALJ ignored the directive from the Appeals Council to reconsider Dr. Messina's opinion. Plaintiff argues that the ALJ failed to evaluate Dr. Messina's opinion under the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927.[2] He further maintains that Dr. Messina found that he was more limited with his upper right extremity than reflected in the RFC and that he required a cane to ambulate, which the ALJ failed to take into account in making the disability determination. Plaintiff submits that the jobs identified at step five would be foreclosed if the ALJ credited Dr. Messina's assessed upper extremity limitation or found that plaintiff required the use of a cane.

Despite plaintiff's argument to the contrary, the ALJ evaluated Dr. Messina's opinion under the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927. An ALJ is not required to explicitly discuss each of these factors in his decision. *Warren v. Astrue*, No. 5:08–cv–149, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009). Here, the ALJ explicitly referenced these regulations in his decision and stated that he had considered the medical opinion evidence with the requirements set forth in therein. Tr. at 25.

Moreover, the ALJ's consideration of these factors is evidenced throughout his decision. The ALJ noted that Dr. Messina is an orthopedist. In the lengthy, thorough, and comprehensive discussion of all the medical evidence, it can be determined that Dr. Messina treated plaintiff over a long period of time, from the time of his accident in 2003 through 2013. This treatment included surgeries and office examinations. A reviewer can further gather from the decision that

---

[2] The ALJ weighs medical opinion by considering factors such as the length of treatment relationship and the frequency of treatment, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. §§ 404.1527(d) and 416.927

8

there were large gaps of time in which Dr. Messina did not provide treatment to plaintiff. Tr. at 28. The ALJ also discussed how Dr. Messina's opinion was inconsistent with other evidence in the record. *Id.* at 27–29, 31, 35–37, 43–45. It is undisputed, then, that the ALJ properly considered Dr. Messina's opinion appropriately under the §§ 404.1527(d) and 416.927 factors.

Plaintiff also asserts that the ALJ ignored Dr. Messina's finding that plaintiff had a 50% limitation in the use of his right upper extremity for reaching, handling, and fingering. Plaintiff argues the ALJ erred in concluding that there were few, if any, abnormal findings, and submits that the medical record notes a decrease in sensation in the radial distribution in his right hand. The medical evidence, which was reviewed in great detail, supports the ALJ's conclusion. While plaintiff points to this one record by Dr. Messina's partner, Dr. Derrick Hickey, the ALJ found that Dr. Hickey's opinion was deserving of no weight inasmuch as it was rendered in August 2005, well before the relevant time period. Tr. at 41. Further, despite the loss of sensation, Dr. Hickey opined that while plaintiff may have limitations in pushing and pulling with the right upper extremity, there were no limitations for grasping or for performing fine manipulations. Tr. at 755. He also opined that plaintiff could frequently lift up to 50 pounds and occasionally lift up to 100 pounds, and that he could continuously carry up to 20 pounds and occasionally carry up to 50 pounds. *Id.* at 754.

The ALJ also noted a relatively benign x-ray of the right elbow and the the lack of imaging studies showing more extensive abnormalities. Tr. at 37. He also pointed to the expansive medical record which contained few complaints of upper extremity or cervical spine symptoms. *Id.* at 37, 45. It also showed that plaintiff demonstrated good grip strength. Finally, the ALJ noted plaintiff's activities of daily living, a functional area in which he was found to have no limitation, included several activities which would require use of the upper extremities,

9

such as fishing, washing dishes, cleaning, traveling by scooter, and mowing the lawn. *Id.* at 37. In sum, the evidence does not support the degree of limitation in reaching, handling, and fingering assessed by Dr. Messina. For this reason, the ALJ was not obligated to incorporate such limitations into the RFC determination.

Finally, plaintiff challenges the ALJ's failure to include his use of a cane in determining his RFC. In a January 2010 physical residual functional capacity assessment questionnaire, Dr. Messina opined that plaintiff would require a cane to occasionally stand or walk. Tr. at 1227. The questionnaire also stated that plaintiff could only walk one city block without experiencing severe pain or needing to rest. *Id.* at 1226. This assessment by Dr. Messina came one month after plaintiff's December 2009 exam. At that time, Dr. Messina's exam noted an antalgic gait but did not reference plaintiff's use a cane. Prior to the December 2009 visit, plaintiff had not been treated by Dr. Messina in over two years.

"The requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(J)(4). An ALJ is required to consider the impact of "medically required" hand-devices. SSR 96–9; *see Wimbush v. Astrue*, No. 4:10–CV–00036, 2011 WL 1743153 at * 2–3 (W.D. Va. May 6, 2011). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p.

The ALJ found that plaintiff does not require a cane. Tr. at 36. The ALJ pointed out that while there were entries in the record where plaintiff was observed to be using a cane, there were also several entries making no mention of his use of a cane. The medical evidence also reflects

occasions on which plaintiff was observed to be walking with a normal or steady gait. Moreover, his activities of daily living included cutting the grass. Finally, plaintiff reported to a consultative examiner that he could walk one and one-half miles, and he testified that he could walk for 30 minutes before needing to rest. *Id.* at 25.

The ALJ concluded that Dr. Messina's assessed limitations were more restrictive than the medical findings documented in his treatment notes dating back to the alleged onset date. *Id.* at 44. The ALJ specifically noted that Dr. Messina's records indicated generally benign findings, minimal swelling, only a slight antalgic gait on occasion and near normal flexion and extension. In none of the preoperative or postoperative notes did Dr. Messina reference that plaintiff required a cane. *Id.* at 31. In contrast, Dr. Messina's treatment notes reflect that he prescribed plaintiff a brace for his knee, describing plaintiff's symptoms and noting that he would benefit from a custom-fitted brace. *Id.* at 952.

Finding Dr. Messina's January 2010 opinion inconsistent with other evidence in the record, the ALJ assigned the opinion limited weight. *Id.* at 43. The record lacks support for a finding that Dr. Messina prescribed the cane or gave any indication of the period of time plaintiff would be required to use one. Nor is there medical documentation describing the circumstances for which the cane is to be used by plaintiff, i.e., standing, walking, and/or balancing. Plaintiff's use of a cane cannot, therefore, be characterized as medically necessary. Because he concluded that plaintiff's use of a cane was not medically required, a finding supported by substantial evidence, the ALJ was not required to incorporate such a limitation into the RFC or in posing hypothetical questions to the VE at step five. In sum, the court finds no error in the ALJ's consideration of Dr. Messina's opinion.

## CONCLUSION

For the reasons detailed below, defendant's motion is GRANTED and plaintiff's motion is DENIED. The decision of the Commissioner is AFFIRMED.

SO ORDERED.

This ___15___ day of March, 2016.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE